## Mortgage Participation Certificates

SAYLOR, Deputy Attorney General, June 15, 1934.—You have asked to be advised whether or not a bank or a bank and trust company after July 3, 1933, may issue and deliver to the public certificates of participation in mortgage pools created prior to that date, sell to the public participations in individual mortgages held by it, and guarantee any participation certificate, bond, or mortgage.

1. Section 1013 of the Banking Code of May 15, 1933, P. L. 624, provides as follows:

"A. Except as otherwise specifically provided in this act, a bank or a bank and trust company shall not have the power to establish a pool or fund of any bonds secured by mortgages, or of any securities, and to sell to any particular corporations or persons, or to the general public, fractional undivided interests therein.

"B. This section shall not be construed to affect a pool or fund of bonds secured by mortgages, or of securities, created by a bank or a bank and trust company prior to the effective date of this act."

Paragraph a of section 1109 of the code provides, inter alia, as follows:

"A trust company, or a bank and trust company in its trust department, may establish a pool or fund of bonds secured by mortgages, or of other securities, purchased solely with funds of estates held by it as fiduciary. . . ."

Clearly no new mortgage pool may be created by any institution under your supervision after July 3, 1933, the effective date of the Banking Code, except for estates for which the institution is fiduciary.

The continued operation of a mortgage pool created before July 3, 1933, for other than trust estates, is not prohibited by the code. After that date, a certificate issued against a pool in which participations have been sold to the public may be exchanged for a new certificate issued against the same pool. Such new certificate may be issued to the holder of the old certificate or to a new holder. A new certificate in an amount less than that of the old certificate may be issued when the occasion requires it.

However, the pool may not be replenished from time to time and thus be

maintained perpetually. The intent of the legislature was to prohibit the operation of mortgage pools and the sale of participations therein to the public. At the same time, the legislature has permitted existing pools to continue in operation until participants therein are paid off.

An institution maintaining a pool on July 3, 1933, must from time to time distribute to the certificate holders the cash proceeds of mortgages which have been paid in full or in part, so that eventually the pool will be finally liquidated and the institution's liability therefor terminated. It may not reinvest such funds in additional mortgages for the pool.

2. With regard to the issuance to the public of participations in a single mortgage held by an institution and under which it continues to hold title and complete control of the mortgage, the Banking Code is not altogether clear. The practice heretofore followed by banks and bank and trust companies in selling such participations, whether or not evidenced by certificates of participation, may have been based upon or assumed from the power to create pools and issue participations therein. This power was connected with that given by legislation to what were then called "trust companies" to act in a fiduciary capacity. Section 29 of the Act of April 29, 1874, P. L. 73, as amended by the Act of May 9, 1889, P. L. 159, clause 5, as last amended by the Act of April 11, 1929, P. L. 512, gives the power to an institution engaged in fiduciary activities to assign to trust estates participations in a general trust fund of mortgages upon real estate securing bonds held by the institution.

Under such prior existing law, it is questionable whether, except for pools established for the benefit of estates for which the institution was fiduciary, there was any power in a bank or in a trust company (now a bank and trust company) to set up and maintain pools and sell participations therein to the public generally. Whether or not they did have such power, it is clear that under the Banking Code they do not have it. If authority for the sale to the public of participations in individual mortgages was dependent on or derived from such power, it does not exist under the Banking Code, which repealed the prior law.

Section 1001 of the Banking Code gives to banks or bank and trust companies, in addition to the general corporate powers granted by the act, various other powers, as therein enumerated. The power to sell participations in mortgages is not included among such enumerated powers. The omission is significant. If the legislature had intended that after July 3, 1933, banks and bank and trust companies should have the power to purchase mortgages and, in turn, to sell participations therein to the public, while continuing to hold title and control thereof, it is our opinion that it would have so stated.

It is clear that a bank or a bank and trust company is permitted under certain circumstances to invest its assets in a mortgage. Section 1001 (a) 5 gives banking institutions the power:

"To discount, buy, sell, negotiate, or assign promissory notes, drafts, bills of exchange, trade and bank acceptances, stocks, bonds, or other evidences of debt; . . ."

A mortgage is an evidence of debt. But it is one thing for an institution to purchase and to sell a mortgage for its own account. It is an entirely different matter for it to sell to the public participations in such mortgage and to continue to hold title thereto. To do so requires that the institution have a fiduciary relationship with those to whom it has sold such participations, as it alone is the mortgagee named in the mortgage, and it must hold it for the benefit of those who have beneficial interests therein.

Only a bank and trust company or a trust company has fiduciary powers.

As a bank does not have the power to act in a fiduciary capacity, it is our opinion that it may not sell participations in a single mortgage. After all, dealing in mortgages and selling participations therein to the general public, and at the same time continuing to hold title thereto, is not banking.

Paragraph *d* of section 1109 of the Banking Code provides as follows:

"A bank and trust company or a trust company shall likewise have the power to create undivided interests in any single bond secured by a mortgage, or in any single security, to be apportioned among estates of which it is fiduciary, in the proportion to which their funds were used to purchase such asset. The bank and trust company or the trust company shall create and assign such interest, and shall designate upon its records the names of the estates to which any such undivided interest shall have been apportioned, and may issue participation certificates therefor in the same manner, under the same conditions, and subject to the same limitations as are authorized or imposed by this section in the case of a pool of more than one bond secured by mortgages, or of more than one security."

It is significant that this phraseology, which appears in a section dealing entirely with the powers of a bank and trust company or a trust company acting as a fiduciary, is limited to the company's fiduciary relationship to the beneficial owner of the participation. It is authority for such companies to issue participations in a single mortgage to a trust estate of which it is fiduciary. It does not go beyond that.

In our opinion, neither a bank nor a bank and trust company has the power to issue and sell to the public participations in a single mortgage whereby the institution continues to hold title to and control over the mortgage.

However, there is no reason why a bank or a bank and trust company should not sell an absolute interest in a bond and mortgage, provided it delivers to the purchaser a duly acknowledged assignment of such absolute interest. If it does so, the institution has divested itself completely of the interest sold and does not continue to hold title to or control over that portion of the bond and mortgage. Such a transaction is not a sale of a participation, but a sale outright of a portion of the bond and mortgage, title to which portion is thereafter absolutely in the purchaser.

3. In no event may an institution guarantee the payment of the principal and interest of bonds secured by mortgages held by the institution, whether or not participations therein have been issued by it. The Act of June 1, 1907, P. L. 382, No. 275, gave this right to trust companies. Banks chartered under the Act of May 13, 1876, P. L. 161, whether or not they acquired the right to act in a fiduciary capacity by accepting the Act of July 17, 1919, P. L. 1032, did not have the power to guarantee the principal and interest of bonds secured by mortgages upon real estate, which bonds it sold to its customers. See the opinion of Deputy Attorney General Anderson to then Secretary of Banking Cameron, dated December 3, 1926, Banks Guaranteeing Mortgages, 8 D. & C. 599.

Section 1021 of the Banking Code specifically prohibits an institution under your supervision from guaranteeing the payment of the principal or the interest of bonds or other obligations secured by mortgages upon real property. Excepted from this prohibition are such guaranties as were valid and outstanding on the effective date of the act.

*Summary*

Therefore, you are advised that after July 3, 1933,

1. A bank or a bank and trust company may not create new mortgage pools,

except for the benefit of estates for which it is acting as fiduciary. It may maintain after that date pools theretofore created and may issue certificates against such pools, provided, however, that it must from time to time, as conditions permit, liquidate the pool and terminate its liability with respect thereto.

2. A bank or a bank and trust company may not, except for the benefit of estates for which it is acting as fiduciary, issue participations in an individual mortgage, title to and control over which it continues to hold, but it may sell an absolute interest in a single bond and mortgage to a purchaser if it deliver to him a duly acknowledged assignment of such absolute interest.

3. A bank or a bank and trust company may not issue or give a guaranty of any participation certificate, bond, or mortgage issued or held by it.

From C. P. Addams, Harrisburg, Pa.